UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FRED TAPP** | **CIVIL ACTION** |
| **VERSUS** | **NO.  05-1903** |
| **BURL CAIN, WARDEN** | **SECTION "B"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

**I.      Factual Background**

The petitioner, Fred Tapp ("Tapp"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On June 9, 1994, Tapp was charged in a nine count Bill of Information in

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Orleans Parish with the following crimes:[3]  Count 1, attempted armed robbery of Renee Ewing; Count 2, second degree kidnapping of Renee Ewing; Count 3, armed robbery of Takia Paynes; Count 4, attempted armed robbery of Simone Cherry; Count 5, armed robbery of Shondrell Perilloux; Count 6, armed robbery of Ronald Speed; Count 7, armed robbery of Ron Alexis; Count 8, armed robbery of Derwin Sylvester; and Count 9, armed robbery of Nicole Johnson.

The record reflects that, on the evening of April 2, 1994, Renee Ewing was walking home in the 7900 block of Fig Street around 8:30 p.m.[4]  A stranger grabbed her by the arm and pointed a gun at her.  He forced her to walk to a side street where he asked her for money.  After she told him that she did not have any money, he searched her then told her to continue walking.  The man fled in the opposite direction.

Ewing ran to a nearby service station and called 911.  She described the perpetrator as a dark-skinned African-American male with a broad nose and a few gold teeth.  She said he was between 5'8" and 5'11" and weighed between 160 to 180 pounds.  She also told police that he had bad body odor and was wearing a red San Francisco starter jacket with a white shirt underneath. Ewing identified Tapp as the perpetrator later that evening after he was apprehended and at trial.

On the same evening, Simone Cherry, Takia Payne and Shondrell Perilloux were walking from the Carrollton Shopping Center to Payne's grandmother's house.  As they approached Apricot Street, a stranger approached them from behind and put a gun to Payne's back.  He told them not to turn around and to walk slowly.  He also told them to give him their money.  Cherry and Perilloux

---

[3]St. Rec. Vol. 2 of 5, Bill of Information (5 pages), 6/9/94.

[4]The facts were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on out-of-time appeal. *State v. Tapp*, 788 So.2d 1215, 1219-1222 (La. App. 4th Cir. 2001); St. Rec. Vol. 1 of 5, 4th Cir. Opinion, 1999-KA-2279, pp. 4-10, 5/30/01.

told him that they did not have any money. He then took Perilloux's gold rope earrings and Payne gave him her money, approximately $55.00. The man told the girls to keep walking and he ran off. The girls went to Payne's grandmother's house and called the police. While the girls were at the house, they heard police sirens in the area. They followed the sirens and located the police. The girls informed the officers that they had been robbed. The girls described the man as an African-American male with gold teeth and a broad nose. They told police he was wearing a red San Francisco starter jacket. Payne and Cherry were able to identify Tapp as the perpetrator that evening. All three girls identified Tapp at trial as the perpetrator.

Nicole Johnson and her boyfriend, Derwin Sylvester, were walking home from the Carrollton Shopping Center on the evening of April 2, 1994. They were walking on South Carrollton towards Claiborne Avenue when a subject approached them with a gun and told them to give him their money. Johnson and Sylvester gave the subject their money, totaling $102.00. The subject told them to walk down Pritchard Place and he ran the other way. The couple flagged down a police officer and informed him of the robbery. The officer took them back to the scene to complete the report. While there, the couple saw Tapp and identified him as the perpetrator. The officer attempted to apprehend Tapp but he drew a gun on the officer and started running. The officer pursued Tapp but was unable to catch him. The couple also described the perpetrator as a dark-skinned Afro-American male with a broad nose and two gold teeth. He was wearing shorts, a San Francisco starter jacket, socks and tennis shoes. Johnson and Sylvester made a photo identification of Tapp several days after the incident. They both identified Tapp at trial as the perpetrator.

Tapp was apprehended later on the evening of April 2, 1994, after he was chased down by police and search dogs in the area of the robberies. His coat was recovered in the yard of a house

through which he ran. The weapon was found the next day on the roof of a shed where Tapp had been found hiding. The police also located a car in the same block of Pritchard Place which the officers learned was registered to a Lisa Tapp.

Tapp denied any involvement in the robberies. He stated that he was walking to his vehicle located at the intersection of South Carrollton Avenue and Pritchard Place. Tapp testified he had taken his girlfriend shopping on April 2, 1994, and his car overheated while they were on Canal Street. He put water in the radiator and took his girlfriend home. Tapp stated that after he left his girlfriend's house, he was going to visit his grandmother for a while and then return to his girlfriend's house. However, the car started to overheat again when he turned onto South Carrollton Avenue. He claimed that he walked to the gas station at the intersection of South Carrollton and Claiborne. However, the gas station did not have any cans to hold water. Tapp then walked to the Burger King where he ate. He stated that, at about 11:00 p.m., he left Burger King and returned to the vehicle. As he approached his vehicle, he saw several police officers standing near it. When he reached the vehicle, the officers handcuffed him and threw him to the ground. Tapp stated that the officers hit him and allowed a police dog to attack him. Tapp contended he sustained a gash above his eye. He also acknowledged that he had two prior convictions for simple burglary and purse snatching.

Prior to trial, on April 10, 1996, the State severed Counts 6 and 7, the armed robberies of Speed and Alexis, from the remaining counts.[5] Tapp was thereafter tried before a jury on April 10,

---

[5]St. Rec. Vol. 2 of 5, Bill of Information (5 pages), 6/9/94 (see 4/10/96 notations).

11 and 12, 1996, on Counts 1 through 5, 8 and 9.[6] The jury found him guilty as charged on each count.[7]

The State filed a multiple bill on April 22, 1996, to which Tapp entered a plea of guilty.[8] The Trial Court sentenced Tapp as a multiple offender on each of the seven counts to serve 35 years on Count 1 and 4, 20 years on Count 2, and 70 years on each of Counts 3, 5, 8, and 9.[9] The State later entered a nolle prosequi on Counts 6 and 7.[10]

Tapp's appointed counsel filed an appeal certifying that the record showed no appealable issues and moved to withdraw.[11] Tapp filed four pro se assignments of error:[12] (1) his constitutional right to remain silent was violated during his initial interrogation; (2) the identifications by Ewing, Payne, and Cherry were unduly suggestive and unreliable and should have been suppressed; (3) the identification evidence was insufficient to establish him to be the perpetrator; and (4) the Trial Court erred in denying his Motion in Limine challenging the admissibility of the weapon.

The Louisiana Fourth Circuit Court of Appeal granted counsel's motion to withdraw on and affirmed the conviction finding no merit to the pro se claims raised.[13] The Court, however, found

---

[6]St. Rec. Vol. 1 of 5, Trial Minutes (2 pages), 4/10/96; Trial Minutes (2 pages) 4/11/96; Trial Minutes, 4/12/96.

[7]*Id*.

[8]St. Rec. Vol. 1 of 5, Sentencing Minutes, 4/22/96; Multiple Bill, 4/22/96.

[9]*Id*.

[10]St. Rec. Vol. 1 of 5, Minute Entry, 10/24/96.

[11]St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 96-KA-2201, 11/19/97; *State v. Tapp*, 704 So.2d 992 (La. App. 4th Cir. 11/19/97).

[12]*Id*.

[13]*Id*.

that the Trial Court erred in sentencing Tapp as a multiple offender on every count. The multiple offender adjudication and sentence were reversed and the matter was remanded for resentencing.

On February 17, 1998, the State filed another multiple bill.[14] The Trial Court held a hearing on March 11, 1998, at which Tapp pleaded guilty to the multiple bill.[15] The Court sentenced Tapp as a multiple offender on Count 3, the armed robbery of Paynes, and sentenced him to serve 70 years without benefit of parole, probation or suspension of sentence to run concurrent with the other sentences. The Court also sentenced Tapp to serve 20 years on Counts 1 and 2, 35 years on Count 4, and 70 years on each of Counts 5, 8, and 9, each sentence was ordered to run concurrent and without benefit of parole, probation or suspension of sentence.

## II.    **Procedural Background**

Almost one year later, on March 19, 1999, Tapp filed a Writ Application with the Louisiana Fourth Circuit attempting to obtain information about appealing his resentencing.[16] On April 23, 1999, the Court ordered the Trial Court to grant Tapp an out-of-time appeal unless he waived the right to appeal.[17] The Trial Court granted the out-of-time appeal as ordered on April 27, 1999.[18]

---

[14] St. Rec. Vol. 1 of 5, Minute Entry, 2/17/98; Multiple Bill, 2/17/98.

[15] St. Rec. Vol. 1 of 5, Minutes of Multiple Bill Hearing, 3/11/98; Transcript of Resentencing, 3/11/98.

[16] St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 99-K-0694, 3/19/99.

[17] St. Rec. Vol. 4 of 5, 4th Cir. Order, 99-K-0694, 4/23/99.

[18] St. Rec. Vol. 1 of 4, Minute Entry, 4/27/99.

Tapp's appointed counsel filed the out-of-time appeal certifying that the record showed no appealable issues and moved to withdraw.[19] Tapp filed five pro se assignments of error:[20] (1) his constitutional right to remain silent was violated during his initial interrogation; (2) the identifications by Ewing, Payne, and Cherry were unduly suggestive and unreliable and should have been suppressed; (3) the identification evidence was insufficient to establish him to be the perpetrator; (4) the Trial Court erred in denying his Motion in Limine challenging the admissibility of the weapon; and (5) the Minute Entry, Docket Sheet and Commitment Order from his original sentencing were in conflict with the transcript.

The Louisiana Fourth Circuit Court of Appeal granted counsel's motion to withdraw on and affirmed the conviction finding no merit to the pro se claims raised.[21] Tapp filed a timely[22] pro se Writ Application with the Louisiana Supreme Court seeking review of his appeal.[23] The Application was denied without reasons on January 11, 2002.[24]

---

[19] St. Rec. Vol. 1 of 5, Appeal Brief, 99-KA-2279, 6/30/99; Supplemental Brief, 99-KA-2279, 2/20/01.

[20] St. Rec. Vol. 1 of 5, Pro Se Supplemental Brief, 99-KA-2279, 12/20/99; Second Pro Se Supplemental Brief, 99-KA-2279, 3/2/01.

[21] *State v. Tapp*, 788 So.2d 1215, 1219-1222 (La. App. 4th Cir. 2001); St. Rec. Vol. 1 of 5, 4th Cir. Opinion, 1999-KA-2279, pp. 4-10, 5/30/01.

[22] La. S.Ct. R. X§5 provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. See *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (postmark date controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A). Tapp's application was signed, post marked and filed within that time period.

[23] St. Rec. Vol. 4 of 5, La. S. Ct. Writ Application, 01-KO-1895, 6/26/01; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2001-KO-1895, 6/26/01.

[24] *State v. Tapp*, 816 So.2d 298 (La. 2002); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2001-KO-1895, 5/24/02.

Over eight months later, on January 31, 2003, Tapp signed a Uniform Application for Post Conviction relief which was filed with the Trial Court.[25] Tapp alleged in the Application that he was actually innocent based on his three grounds for relief: (1) the identifications were suggestive and should have been suppressed; (2) the gun was unreliable as evidence and should not have been admitted; and (3) Counsel provided ineffective assistance for failure to investigate and prepare for trial, failure to investigate whether Tapp should testify at trial, and failure to object to the introduction of evidence. The Trial Court denied the application on September 3, 2003, as untimely under La. Code Crim. P. art. 930.8.[26]

Tapp filed a timely[27] Writ Application with the Louisiana Fourth Circuit on October 3, 2003, raising the same issues.[28] The Court found that Tapp's post conviction application was timely under La. Code Crim. P. art. 930.8 and denied the Application for Tapp's failure to show that he was entitled to relief.[29]

---

[25]St. Rec. Vol. 5 of 5, Uniform Application for Post Conviction Relief, signed 1/31/03. The filing date does not appear on the copy in the record. The State suggests that it was filed on February 3, 2003, but there is nothing in the record to confirm the filing date.

[26]St. Rec. Vol. 4 of 5, Judgment, 9/3/03. La. Code Crim. P. art. 930.8 provides the limitations period for a defendant to seek post-conviction relief in Louisiana.

[27]Louisiana law provides a 30 day period to file for review of a trial court's ruling with the circuit court of appeal. La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922.

[28]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 2003-K-1734, 10/3/03.

[29]St. Rec. Vol. 4 of 5, 4th Cir. Order, 2003-K-1734, 10/23/03.

Almost seven months later, on May 25, 2004, Tapp filed an untimely[30] Writ Application with the Louisiana Supreme Court.[31] The Court denied the Application without reasons on April 23, 2004.[32]

## III. Federal Petition

On May 19, 2005, Tapp filed a Petition for Federal Habeas Corpus Relief in which he alleged the following grounds for relief:[33] (1) his constitutional right to remain silent was violated during his initial interrogation; (2) illegal identification processes were used in violation of his due process rights; (3) the physical identification evidence was insufficient to establish him to be the perpetrator; (3)(a) the misidentification based on Officer Lanasa's testimony which was inconsistent; (4) the Trial Court erred in denying his Motion in Limine challenging the admissibility of the weapon; and (5) Tapp is actually innocent based on two grounds: (a) the gun was unreliable as evidence and should not have been admitted; and (b) Counsel provided ineffective assistance for failure to investigate and prepare for trial, failure to investigate whether Tapp should testify at trial, and failure to object to the introduction of evidence. The State filed a Response to Tapp's federal petition alleging that the petition is not timely filed.[34]

## IV. Standards of Review

---

[30]The Writ Application was filed in the Louisiana Supreme Court on May 25, 2004. The pleading was dated by Tapp on April 7, 2004. Both dates are outside of the time period allowed under La. S. Ct. Rule X§5.

[31]St. Rec. Vol. 4 of 5, La. S. Ct. Writ Application, 04-KH-1222, 5/25/04 (dated 4/7/04).

[32]*State ex rel. Tapp v. State*, 897 So.2d 593 (La. 2004); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2004-KH-1222, 4/1/05.

[33]Rec. Doc. No. 1.

[34]Rec. Doc. No. 12.

9

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to Tapp's petition, which is deemed filed in this court under the federal mailbox rule on May 1, 2005.[36]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State has raised the untimeliness of the petition as its defense.

## V.     **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[37] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). The Court must

---

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Tapp's federal habeas petition on May 19, 2005, when he paid the filing fee. Tapp did not date his signature on the petition itself or the memorandum in support. Tapp only dated the signature on the pauper application on May 1, 2005 and it was submitted with the petition. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[37]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State

therefore determine when Tapp's conviction became final to establish the triggering event for the timeliness of this federal petition.

### A. The Finality of the Conviction

As outlined above, Tapp was resentenced as a multiple offender on March 11, 1998. Ordinarily, his conviction would become final five days later on March 16, 1998, when he did not timely move to appeal or file for reconsideration of his sentence. *See Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five day deadline for filing a notice of appeal under La. Code Crim. P. art. 914[38]), *cert. denied*, 539 U.S. 918 (2003); *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004) (applying *Salinas v. Dretke*, 354 F.3d 425 (5th Cir.), *cert. denied*, 541 U.S. 1032 (2004)) (a state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review and not at conclusion of an out-of-time appeal granted on application for post conviction relief).

However, in the instant case, Tapp was granted and received an out-of-time appeal almost one year after his conviction would otherwise be considered final under the AEDPA. The question

---

action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

[38]At the time of petitioner's conviction, La. Code Crim. P. art. 914 required a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence.  Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).  Article 914 was amended by Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

before the Court is, therefore, whether the out-of-time appeal had an impact on the commencement of the AEDPA's limitation period.

In *Salinas v. Dretke*, 354 F.3d 425 (5th Cir.), *cert. denied*, 124 S. Ct. 2099 (2004), the United States Fifth Circuit Court of Appeals was confronted with the question of whether an out-of-time petition for appellate review was still within "direct review" such that it restarts the finality of the conviction at issue for AEDPA limitation purposes. *Id*., at 429. The Court resolved that it is not.

In so finding, the *Salinas* court acknowledged that the granting of a petition for out-of-time appellate review by the Texas state courts restored the petitioner to the position he was in when he first possessed the right to direct review under state law. *Id*., at 429; *see also*, *Cockerham v. Cain*, 283 F.3d 657 (5th Cir. 2002) (same, under Louisiana law). The Court determined, however, that the granting of out-of-time review did not affect finality under federal law. The Court considered the fact that, under Texas law, in order to gain the out-of-time review, the petitioner was to make his request through the collateral review process. This, the Court concluded, took the petitioner out of the "direct review" process and entitled him to nothing more than tolling of the federal limitations period. *Id*., at p. 430.

Thus, for purposes of federal law, the Fifth Circuit held that the granting of a request for out-of-time review "tolls AEDPA's statute of limitations . . . but it does not require a federal court to restart the running of AEDPA's limitations period altogether." *Id*., at p. 430 (footnote omitted); *see also McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. 2004) (applying *Salinas* rationale to Louisiana out-of-time writ application). The Court resolved that, for limitations purposes, the conviction was final when the direct review process ended and it remained so. *Id*. The *Salinas* court further resolved that the fact that the petitioner was eventually granted an out-of-time appeal due to

ineffective assistance of counsel did not restart the federal limitations period, nor did the attorney error or neglect constitute a basis for equitable tolling. *Salinas*, 354 F.2d at 432 (quoting *Cousin*, 310 F.3d at 848).

Under Louisiana law, as in Texas, in order to obtain an out-of-time appeal, a petitioner must file an application for post-conviction relief. *McGee*, 104 Fed. Appx. at 991 (*citing State v. Counterman*, 475 So.2d 336, 339 (La. 1985)). Thus, the analysis in *Salinas* applies to Louisiana convictions, leaving the conviction final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review. *Id*.

In the instant case, Tapp, like the petitioners in *Salinas* and *McGee*, was granted his out-of-time appeal as a result of his application for post-conviction relief in the state courts. The out-of-time appeal did <u>not</u> restart or revive the finality of Tapp's conviction for purposes of calculating the AEDPA's limitations period. Therefore, pursuant to the holding in *Salinas*, as applied to Louisiana law in *McGee*, Tapp's conviction was final on March 16, 1998, as calculated above.

B.    <u>The Limitations Period</u>

Under the plain language of § 2244, he had until March 16, 1999, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Tapp's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

1.    <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a

State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same

substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Tapp's AEDPA filing period began to run on March 17, 1998, the day after his conviction became final following his resentencing. The filing period ran uninterrupted for 349 days, until March 1, 1999, when Tapp is deemed to have submitted his Writ Application to the Louisiana Fourth Circuit seeking an out-of-time appeal.[39] The Application remained pending and Tapp's federal filing period is deemed tolled until resolution of his out-of-time appeal. The Louisiana Supreme Court denied his Writ Application following the out-of-time appeal on May 24, 2002.

---

[39]This Application was filed in the Louisiana Fourth Circuit on March 19, 1999. However, Tapp did not date his signature nor does it bear a post mark date for purposes of applying the state mailbox rule. Nevertheless, attached to the Application is an letter exhibit which Tapp claims to have mailed on March 1, 1999. Therefore, the Application itself could not have been prepared prior to that date. Affording Tapp the most liberal of calculations, the Court will consider March 1, 1999 as the earliest date on which he could have given the Application to prison officials for mailing to the Louisiana Fourth Circuit.

The AEDPA filing period began to run again on May 25, 2002, and did so without interruption for the remaining 16 days, until Sunday, June 9, 2002, or the next business day, Monday June 10, 2002, when it expired. Tapp had no properly filed state application for post conviction relief or other collateral review pending during that time period. His next such filing would be 235 days later when he submitted his Uniform Application for Post Conviction Relief to the Trial Court on January 31, 2003. Tapp's federal petition is deemed filed on May 1, 2005, which was almost three years after the AEDPA filing period expired.

Tapp's federal habeas petition is therefore untimely under the statutory tolling calculation above. Tapp has not alleged and this Court can find no basis for the application of the equitable tolling doctrine to this case.

### 2. **Equitable Tolling**

As discussed *supra*, Tapp is <u>not</u> entitled to equitable tolling for the period of delay in obtaining his out-of-time appeal, even if that delay was the result of attorney error. *Salinas*, 354 F.2d at 432 (quoting *Cousin*, 310 F.3d at 848). The doctrine of equitable tolling allows for tolling of the AEDPA's limitation period when the petitioner has been pursuing his rights diligently, and there are rare or extraordinary circumstances preventing timely filing. *Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814 (2005); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 125 S. Ct. at 1814-15; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Tapp has not alleged and the record does not reflect any basis for equitable tolling in this case. The record does not show the type of extraordinary circumstances which would warrant equitable tolling nor does the out-of-time appeal warrant such relief.

### C. Conclusion

For all of the foregoing reasons, Tapp's federal habeas corpus petition, deemed filed on May 1, 2005, was filed almost three years after the AEDPA filing period expired on June 10, 1999, as calculated above. His federal habeas petition is untimely and should be dismissed as time barred.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Fred Tapp's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this \_\_27th\_\_ day of \_\_November\_\_, 2006.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**